IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNTRYWIDE FINANCIAL CORPORATION,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>COUNTRYWIDE HOME LOANS, INC.,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>COUNTRYWIDE SECURITIES CORPORATION,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>CWABS, INC.,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>CWALT, INC.,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>CWHEQ, INC.,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>CWMBS, INC.,<br>31303 Agoura Road<br>Westlake Village, CA 91361<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br>One Bryant Park<br>New York, NY 10036<br><br>MERRILL LYNCH MORTGAGE LENDING, INC.,<br>One Bryant Park<br>New York, NY 10036<br><br>MERRILL LYNCH MORTGAGE CAPITAL INC.,<br>One Bryant Park<br>New York, NY 10036 | Civil Action No. 19-347 |

MERRILL LYNCH MORTGAGE INVESTORS, INC.,
One Bryant Park
New York NY 10036

FIRST FRANKLIN FINANCIAL CORPORATION,
225 West Hillcrest Drive
Thousand Oaks, CA 91360

BANK OF AMERICA, N.A.,
100 North Tryon Street, Suite 170
Charlotte, NC 28202

BANC OF AMERICA MORTGAGE SECURITIES, INC.,
201 North Tryon Street
Charlotte, NC 28202

ASSET BACKED FUNDING CORPORATION,
100 North Tryon Street
Charlotte, NC 28255

and BANC OF AMERICA FUNDING CORPORATION,
214 North Tryon Street
Charlotte, NC 28255

    Plaintiffs,

 v.

NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Western Corporate Federal Credit Union, U.S. Central Federal Credit Union, Members United Corporate Federal Credit Union, Constitution Corporate Federal Credit Union, and Southwest Corporate Federal Credit Union, and Conservator of Texans Credit Union,
1755 Duke Street,
Alexandria, VA 22314,

    Defendant.

**COMPLAINT**

Plaintiffs Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Securities Corporation, CWABS, Inc., CWALT, Inc., CWHEQ, Inc., CWMBS, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., Merrill Lynch Mortgage Investors, Inc., First Franklin Financial Corporation, Bank of America, N.A. (for itself and as successor by merger to Countrywide Bank, FSB, Merrill Lynch Credit Corporation, and BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP), Banc of America Mortgage Securities, Inc., Asset Backed Funding Corporation, and Banc of America Funding Corporation (together, "Plaintiffs"), by their undersigned counsel, for their complaint against defendant National Credit Union Administration Board ("NCUA") in its capacity as liquidating agent pursuant to 12 U.S.C. § 1787(b)(2) of Western Corporate Federal Credit Union ("Western Corporate"), U.S. Central Federal Credit Union ("U.S. Central"), Members United Corporate Federal Credit Union ("Members United"), Constitution Corporate Federal Credit Union ("Constitution Corporate"), and Southwest Corporate Federal Credit Union ("Southwest") and conservator pursuant to 12 U.S.C. § 1786(h) of Texans Credit Union ("Texans," and together with Western Corporate, U.S. Central, Members United, Constitution Corporate, and Southwest, the "Credit Unions"), allege as follows:

**INTRODUCTION**

1.      In March 2013, NCUA entered into a settlement agreement (the "NCUA Settlement Agreement") with Plaintiffs and certain affiliates addressing claims arising out of the Credit Unions' purchases of mortgage-backed securities ("MBS") that were underwritten, sponsored, sold, or issued by Plaintiffs or their affiliates ("Plaintiffs MBS").

2.      Because at the time that it entered into the NCUA Settlement Agreement NCUA was also pursuing claims against third parties ("Third Parties") arising out of the Credit Unions'

purchases of certain Plaintiffs MBS, NCUA agreed to protect Plaintiffs from liability arising out of NCUA's pursuit of such claims. In the event that NCUA later entered into a settlement with certain third parties involved with Plaintiffs MBS (each, a "Third Party"), the NCUA Settlement Agreement requires NCUA to "use good faith, best efforts to obtain from the Third Party a release of [Plaintiffs] as to all claims for contribution, indemnification, or any other liability arising out of or relating in any way to such claims then being settled with such Third Party." For purposes of this complaint, such claims against any or all Plaintiffs are referred to as "Indemnification Claims."

3.  This action concerns NCUA's repeated breaches of its contractual obligation to use its "good faith, best efforts" to obtain releases of Third Party Indemnification Claims when settling claims as liquidator/conservator of the Credit Unions. In certain settlement negotiations with Third Parties, NCUA repudiated that contractual obligation and through its conduct undermined any chance of actually obtaining releases of Indemnification Claims.

## THE PARTIES

4.  Plaintiffs Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Securities Corporation, CWABS, Inc., CWALT, Inc., CWHEQ, Inc., CWMBS, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., Merrill Lynch Mortgage Investors, Inc., First Franklin Financial Corporation, Bank of America, N.A. (for itself and as successor by merger to Countrywide Bank, FSB, Merrill Lynch Credit Corporation, and BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP), Banc of America Mortgage Securities, Inc., Asset Backed Funding Corporation, and Banc of America Funding Corporation are parties to the NCUA Settlement Agreement.

5. Defendant NCUA, a party to the NCUA Settlement Agreement, oversees the National Credit Union Administration, an independent government agency that charters and regulates federal credit unions. NCUA is the liquidating agent for Western Corporate, U.S. Central, Members United, Constitution Corporate, and Southwest, and was the conservator for Texans.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 12 U.S.C. § 1789(a)(2), which provides that "[a]ll suits of a civil nature at common law or in equity to which the [NCUA] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy."

7. This Court also has subject matter jurisdiction pursuant to 12 U.S.C. § 1787(b)(6), which provides that after NCUA disallows a claim against a credit union for which it is the liquidating agent, "the claimant may . . . file suit on such claim . . . [in] the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)."

8. Venue is proper in this district because the NCUA Settlement Agreement provides in part that "the Parties expressly submit to the exclusive jurisdiction of the United States District Court for the District of Columbia."

9. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) and (c)(2) because NCUA is subject to personal jurisdiction in this district. This Court has personal jurisdiction over NCUA because it conducts business in this district and because it consented to personal jurisdiction in the NCUA Settlement Agreement.

10. Plaintiffs have complied with any and all requirements to exhaust administrative remedies prior to filing this action pursuant to 12 U.S.C. § 1787(b), including the filing of an administrative claim with NCUA asserting breach of contract and other claims arising of the same conduct described in the present action (the "Administrative Claim"), which NCUA then denied.  Specifically, on November 14, 2018, NCUA denied the Administrative Claim, and on January 14, 2019, NCUA denied Plaintiffs' request for reconsideration.  Pursuant to 12 U.S.C. § 1787(b)(6) and 12 C.F.R. § 746.203(f)(2), Plaintiffs have timely filed this *de novo* judicial proceeding.

## FACTUAL BACKGROUND

### The NCUA Settlement Agreement

11. In the years leading up to the collapse in the housing and credit markets that began in 2007, the Credit Unions purchased MBS issued by Plaintiffs and others.

12. Thereafter, the Credit Unions ultimately failed and were placed into liquidation or conservatorship by NCUA prior to 2011.

13. In its capacity as liquidator/conservator of the Credit Unions, NCUA threatened to sue Plaintiffs and their affiliates concerning Plaintiffs MBS that the Credit Unions had bought. NCUA alleged that the quality and true value of such securities had been misrepresented and that the Credit Unions incurred losses when Plaintiffs MBS they had purchased declined in value as the housing and credit markets collapsed.  Plaintiffs denied and continue to deny NCUA's allegations.

14. Following settlement negotiations, in 2013, Plaintiffs and NCUA signed the NCUA Settlement Agreement, pursuant to which Plaintiffs agreed to make a monetary payment to NCUA (the "NCUA Settlement Consideration") in exchange for, among other material terms,

a release of claims arising out of the Credit Unions' purchases of Plaintiffs MBS as well as NCUA's agreement that it would use its "good faith, best efforts" to obtain releases of Third Party Indemnification Claims from Third Parties with which NCUA later settled. And if despite the exercise of such efforts, NCUA was unable to obtain such a release from such a Third Party with whom it intended to settle, the NCUA Settlement Agreement requires NCUA to provide Plaintiffs with "notice of such, not less than thirty-five (35) calendar days prior to executing a settlement with the Third Party."

15. The obligation to use "good faith, best efforts" under the NCUA Settlement Agreement is a separate and independent obligation of the Credit Unions. The NCUA Settlement Agreement explicitly requires "the NCUA-Related Parties" collectively to use "good faith, best efforts" to secure releases for Plaintiffs. The term "NCUA-Related Parties" includes each of the Credit Unions – that is, Western Corporate, U.S. Central, Members United, Constitution Corporate, Southwest, and Texans. Thus, each and every Credit Union is liable for each and every failure by NCUA to use its "good faith, best efforts" to obtain releases of Third Party Indemnification Claims.

16. The NCUA Settlement Agreement provides that "[t]he Parties . . . agree that this Agreement and its interpretation and performance shall be governed by the laws of the State of New York without giving effect to conflict-of-law rules."

17. Under New York law, the obligation to use "good faith, best efforts" to obtain a particular result (here, securing releases of Third Party Indemnification Claims) requires without limitation using all reasonable methods to attempt to obtain that result.

18. Plaintiffs have fulfilled all of their obligations under the NCUA Settlement Agreement, including by paying NCUA the NCUA Settlement Consideration in full.

19. NCUA, however, has repudiated and materially breached its obligation under the NCUA Settlement Agreement to use its "good faith, best efforts" to secure releases of certain Third Party Indemnification Claims.

### NCUA Settlement With Entity 1

20. After entering into the NCUA Settlement Agreement, NCUA engaged in settlement negotiations with another third party financial institution ("Entity 1") concerning NCUA's claims against Entity 1 arising out of the Credit Unions' purchase of MBS and alleged misstatements and/or omissions in the public offering documents for those MBS. The MBS at issue included Plaintiffs MBS.

21. In settling such claims against Entity 1, NCUA was obligated by the NCUA Settlement Agreement to use its "good faith, best efforts" to secure releases of Entity 1 Indemnification Claims. NCUA repudiated and materially breached that obligation.

22. For example, NCUA failed to apprise Entity 1 at the outset of negotiations that NCUA would seek to obtain a release of Entity 1 Indemnification Claims and thereafter specifically told Entity 1 that such a release would not be required for NCUA to settle with Entity 1. Instead of using its "good faith, best efforts" to secure such a release, NCUA made a settlement demand to Entity 1 that did not include any release of Entity 1 Indemnification Claims.

23. Thereafter, NCUA entered into two settlement agreements with Entity 1.

24. As to the first settlement agreement, NCUA accepted a settlement that did not contain any release of Entity 1 Indemnification Claims and did so without first making any effort whatsoever to obtain any release for Plaintiffs. Moreover, NCUA never provided Plaintiffs with

the 35-days' notice required by the NCUA Settlement Agreement in the event that it was unable despite its "good faith, best efforts" to obtain a release of Entity 1 Indemnification Claims.

25. As to the second settlement agreement, NCUA again failed to comply with its obligation to use its "good faith, best efforts" to secure a release of Entity 1 Indemnification Claims. Despite Entity 1 informing NCUA that it would provide a release of Indemnification Claims for a certain reduction in NCUA's settlement demand, NCUA never countered that proposal with any amount by which NCUA would be willing to adjust its settlement demand in order to obtain such a release. NCUA likewise never proposed any alternative consideration that might incentivize Entity 1 to provide such a release. In fact, NCUA never attempted to engage in any further negotiations with Entity 1 whatsoever to obtain a release of Entity 1 Indemnification Claims.

26. As a result of NCUA's failure to comply with its contractual obligation to use its "good faith, best efforts" to obtain a release of Entity 1 Indemnification Claims, certain Plaintiffs have now entered into agreements with Entity 1 (the "Entity 1 Settlement Agreements") to resolve Entity 1's demands for indemnification relating to Plaintiffs MBS that were covered by Entity 1's settlements with NCUA.

27. The Entity 1 Settlement Agreements required certain Plaintiffs to pay monetary consideration (in amounts known to NCUA) in exchange for a release of Entity 1 Indemnification Claims (the "Plaintiffs-Entity 1 Payments"), which amount has been paid.

28. The Plaintiffs-Entity 1 Payments constitute damage to Plaintiffs caused by NCUA. Had NCUA complied with its contractual obligation in the NCUA Settlement Agreement to use its "good faith, best efforts" to obtain a release of Entity 1 Indemnification Claims, Plaintiffs would have avoided the Plaintiffs-Entity 1 Payments in their entirety.

**NCUA Settlement With Entity 2**

29.     After entering into the NCUA Settlement Agreement, NCUA engaged in settlement negotiations with another third party financial institution ("Entity 2") concerning NCUA's claims against Entity 2 arising out of the Credit Unions' purchase of MBS and alleged misstatements and/or omissions in the public offering documents for those MBS.  The MBS at issue included Plaintiffs MBS.

30.     Thereafter, NCUA confirmed to Plaintiffs that it had "reached a settlement in principle" with Entity 2 and that "NCUA intend[ed] to execute a settlement agreement" with Entity 2 that would "not provide a release" of Entity 2 Indemnification Claims.

31.     NCUA failed to comply with its contractual obligation under the NCUA Settlement Agreement to use its "good faith, best efforts" to obtain a release of Entity 2 Indemnification Claims.

32.     Despite Entity 2 informing NCUA that it would provide a release of Indemnification Claims for a certain reduction in NCUA's settlement demand, NCUA never countered that proposal with any amount by which NCUA would be willing to adjust its settlement demand in order to obtain such a release.  NCUA likewise never proposed any alternative consideration that might have incentivized Entity 2 to provide such a release.  In fact, NCUA never attempted to engage in any further negotiations with Entity 2 whatsoever to obtain such a release.

33.     NCUA ultimately settled with Entity 2 without any further discussion of a possible release of Entity 2 Indemnification Claims, without any discussion of a possible alternative settlement reduction amount or other consideration that might have incentivized Entity 2 to agree to provide such a release, and without obtaining any such release.

34. By refusing to engage in any further discussions whatsoever with Entity 2 regarding the possibility of obtaining a release of Entity 2 Indemnification Claims, NCUA failed to use its "good faith, best efforts" as required by the NCUA Settlement Agreement.

35. As a result of NCUA's failure to comply with its contractual obligation to use its "good faith, best efforts" to obtain a release of Entity 2 Indemnification Claims, certain Plaintiffs have now entered into an agreement with Entity 2 (the "Entity 2 Settlement Agreement") to resolve Entity 2's demands for indemnification relating to Plaintiffs MBS that were covered by Entity 2's settlement with NCUA.

36. The Entity 2 Settlement Agreement required certain Plaintiffs to pay monetary consideration (in an amount known to NCUA) in exchange for a release of Entity 2 Indemnification Claims (the "Plaintiffs-Entity 2 Payment"), which amount has been paid.

37. The Plaintiffs-Entity 2 Payment constitutes damage to Plaintiffs caused by NCUA.  Had NCUA complied with its contractual obligation in the NCUA Settlement Agreement to use its "good faith, best efforts" to obtain a release of Entity 2 Indemnification Claims, Plaintiffs would have avoided the Plaintiffs-Entity 2 Payment in its entirety.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract as to Entity 1 Indemnification Claims)

38. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

39. Plaintiffs have fully performed all of their obligations under the NCUA Settlement Agreement, including by paying the NCUA Settlement Consideration in full.

40. NCUA has repudiated and materially breached the NCUA Settlement Agreement by failing to use its "good faith, best efforts" to obtain a release of Entity 1 Indemnification Claims.

41. As a result of NCUA's breach of the NCUA Settlement Agreement, Plaintiffs have incurred monetary damages in an amount to be determined at trial, including without limitation (a) the Plaintiffs-Entity 1 Payments made pursuant to the Entity 1 Settlement Agreements that resolved Entity 1 Indemnification Claims and (b) attorneys' fees and other costs and expenses incurred in defending against Entity 1 Indemnification Claims and pursuing the Administrative Claim.

## COUNT II
### (Breach of Contract as to Entity 2 Indemnification Claims)

42. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

43. Plaintiffs have fully performed all of their obligations under the NCUA Settlement Agreement, including by paying the NCUA Settlement Consideration in full.

44. NCUA has repudiated and materially breached the NCUA Settlement Agreement by failing to use its "good faith, best efforts" to obtain a release of Entity 2 Indemnification Claims.

45. As a result of NCUA's breach of the NCUA Settlement Agreement, Plaintiffs have incurred monetary damages in an amount to be determined at trial, including without limitation (a) the Plaintiffs-Entity 2 Payment made pursuant to the Entity 2 Settlement Agreement that resolved Entity 2 Indemnification Claims and (b) attorneys' fees and other costs and expenses incurred in defending against Entity 2 Indemnification Claims and pursuing the Administrative Claim

## COUNT III
### (Unjust Enrichment)

46. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

47. Plaintiffs paid NCUA in exchange for (among other things) NCUA's agreement to protect Plaintiffs from Third Party Indemnification Claims. The essence of the bargain was that NCUA could continue to pursue Third Parties to recover amounts for their alleged liability with respect to Plaintiffs MBS that were the subject of the NCUA Settlement Agreement but NCUA would not be entitled to recover from those Third Parties amounts that the Third Parties could then turn around and recover from Plaintiffs.

48. NCUA agreed to this arrangement, pursuant to which it might be required to accept less in settlement from a Third Party in order to obtain a release for Plaintiffs.

49. Notwithstanding this arrangement, NCUA refused to accept less in settlement from Third Parties in order to obtain releases of Third Party Indemnification Claims, though NCUA has retained the entirety of the settlement payment made by Plaintiffs, as well as the sums received in settlements with Entity 1 and Entity 2.

50. To the contrary, after execution of the NCUA Settlement Agreement, NCUA has asserted that its obligation under the NCUA Settlement Agreement to use its "good faith, best efforts" to obtain releases of Third Party Indemnification Claims is now unenforceable under New York law.

51. As a result of the foregoing, NCUA has been unjustly enriched in an amount to be determined at trial.

52. Under these circumstances, it would be against equity to permit NCUA to retain this unjust enrichment, which should be returned to Plaintiffs.

## COUNT IV
## (Breach of the Implied Covenant of Good Faith and Fair Dealing)

53. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

54. Pursuant to New York law, the NCUA Settlement Agreement contains an implied covenant of good faith and fair dealing.

55. NCUA has breached the NCUA Settlement Agreement's implied covenant of good faith and fair dealing by, among other acts and omissions:

   a. Asserting that its obligation to use its "good faith, best efforts" to obtain releases of Third Party Indemnification Claims is now unenforceable under New York law after signing the NCUA Settlement Agreement and accepting from Plaintiffs the entirety of the NCUA Settlement Consideration; and

   b. Acting in a manner that undermined its obligation to use its "good faith, best efforts" to secure releases of Third Party Indemnification Claims and undermined any chance of actually obtaining such releases by, among other actions, informing Third Parties during negotiations that such releases would not be a required term of any ultimate settlement with NCUA.

56. As a result of NCUA's conduct, Plaintiffs have been denied the fruits of the NCUA Settlement Agreement and damaged in an amount to be determined at trial.

## COUNT V
## (Administrative Procedure Act - 5 U.S.C. §§ 702 and 706(2))

57. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

58. NCUA set a May 17, 2016 bar date for Plaintiffs to file any administrative claim related to NCUA's failure to comply with the NCUA Settlement Agreement (the "May 17, 2016 Bar Date"), while stating that it was unclear whether Plaintiffs' claims were ripe for review.

59. In the event that NCUA takes the position that the May 17, 2016 Bar Date precludes Plaintiffs from pursuing claims over subsequent breaches of the NCUA Settlement Agreement by NCUA and/or subsequent injuries sustained as a result of breaches by NCUA at any time, the May 17, 2016 Bar Date deprives Plaintiffs of a remedy for any claims which may have been unripe as of May 17, 2016, as well as NCUA's future breaches of the NCUA Settlement Agreement after May 17, 2016,

60. In the event that NCUA takes the position that the May 17, 2016 Bar Date prevents only Plaintiffs, and not any other creditors, from pursuing claims that have not yet ripened, the May 17, 2016 Bar Date constitutes an impermissible effort to deprive a specific creditor of a remedy for its claims against NCUA.

61. In the event that NCUA takes the positions identified in paragraphs 59 and 60 above, NCUA's conduct is arbitrary, capricious, and otherwise not in accordance with law and Plaintiffs are entitled to a declaratory judgment that: (1) NCUA's establishment of a May 17, 2016 bar date for any claim by Plaintiffs relating to NCUA's noncompliance with the NCUA Settlement Agreement is unlawful; and (2) NCUA must establish a bar date (or bar dates) that provides (or provide) Plaintiffs a full and fair opportunity to pursue any claim relating to NCUA's noncompliance with the NCUA Settlement Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendant as follows:

(a) on the First and Second Causes of Action, awarding Plaintiffs damages for Defendant's breaches of the NCUA Settlement Agreement, as described above;

(b) on the Third Cause of Action, requiring Defendant to disgorge to Plaintiffs the amount by which it has been unjustly enriched;

(c) on the Fourth Cause of Action, awarding Plaintiffs damages for Defendant's breach of the implied covenant of good faith and fair dealing, as described above;

(d) on the Fifth Cause of Action, entering a declaratory judgment:

 (i) That in the event that NCUA takes the positions identified in paragraphs 59 and 60 above, NCUA's establishment of a May 17, 2016 bar date for any claim by Plaintiffs relating to NCUA's noncompliance with the NCUA Settlement Agreement is arbitrary, capricious, and otherwise not in accordance with law; and

 (ii) That in the event that NCUA takes the positions identified in paragraphs 59 and 60 above, NCUA must establish a bar date (or bar dates) that provides (or provide) Plaintiffs a full and fair opportunity to pursue any claim relating to NCUA's noncompliance with the NCUA Settlement Agreement;

(e) awarding Plaintiffs their costs and attorneys' fees incurred in connection with submitting the Administrative Claim in accordance with NCUA's administrative claim procedures; and

      (f)    granting Plaintiffs such other and further relief, including awarding Plaintiffs their costs and attorneys' fees, as this Court may deem just and proper.

Dated: February 11, 2019

Respectfully submitted,

**GOODWIN PROCTER LLP**

*/s/ William M. Jay*
William M. Jay (D.C. Bar No. 480185)
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
wjay@goodwinlaw.com

Brian E. Pastuszenski (*pro hac vice pending*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
bpastuszenski@goodwinlaw.com

**MUNGER TOLLES & OLSON LLP**
Richard C. St. John (*pro hac vice pending*)
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
richard.stjohn@mto.com

*Counsel for Plaintiffs*